■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WELDON INGRAM, JR., Appellant. [943 NYS2d 311]—

Garry, J. Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered March 21, 2011, convicting defendant following a nonjury trial of the crime of assault in the second degree (two counts).

In January 2010, defendant hit and kicked his girlfriend (hereinafter the victim). In April 2010, he punched her repeatedly in the eyes. He was subsequently indicted on two counts of assault in the second degree and convicted as charged following a nonjury trial. County Court sentenced defendant to an aggregate prison term of 10 1/2 years with six years of postrelease supervision.

Defendant appeals, asserting that his convictions are not supported by the weight of the evidence.[1] In evaluating this claim, we must first determine whether a different verdict would have

---

1. Defendant failed to preserve his challenge to the legal sufficiency of the evidence, as his trial motion to dismiss was not "specifically directed at the error[s] now alleged on appeal" (*People v Lumnah*, 81 AD3d 1175, 1177 [2011], *lv denied* 16 NY3d 897 [2011]; *see People v Carncross*, 14 NY3d 319, 324-325 [2010]). His challenge to the weight of the evidence nevertheless requires a review of the evidence supporting each element of the crimes charged (*see*

been reasonable and, if so, we "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; *see People v Romero*, 7 NY3d 633, 643-644 [2006]).

As to the January 2010 incident, the People were required to establish that, "[w]ith intent to cause physical injury to another person, [defendant] cause[d] such injury . . . by means of a . . . dangerous instrument" (Penal Law § 120.05 [2]). The victim testified that, in addition to hitting her with his fists, defendant kicked her in the side while wearing Timberland boots. She described the boots, which she had bought for him, in her testimony. A neighbor testified that she heard the victim's screams, saw her attempting to escape from her apartment while defendant tried to pull her back in, and then saw defendant flee down a stairway. The victim then complained that her ribs hurt, and showed the neighbor bruising on her side. A police officer who responded to the neighbor's 911 call testified that the victim said that she had been kicked and her abdomen and ribs were painful. The following day the victim was treated at an emergency room and diagnosed with a fractured rib. She testified that she was "very, very sore" for two to three weeks thereafter and took prescribed medication for the pain.

We reject defendant's argument that the weight of the evidence failed to establish that he used a "dangerous instrument" (Penal Law § 10.00 [13]). It is well settled that boots may constitute dangerous instruments when used to kick a victim (*see e.g. People v Carter*, 53 NY2d 113, 116-117 [1981]; *People v Hines*, 39 AD3d 968, 969 [2007], *lv denied* 9 NY3d 876 [2007]). The victim's testimony that defendant wore boots was uncorroborated, but also unrefuted; the investigating officer testified that he did not see defendant and did not ask the victim about defendant's footwear, and the neighbor testified that she did not notice defendant's footwear, but that he was otherwise fully clothed in trousers and a leather jacket as he fled from the building (*compare People v Bidwell*, 153 AD3d 960, 961 [1989]). The victim's history of mental illness did not render her testimony incredible as a matter of law (*see People v Blair*, 32 AD3d 613, 614 [2006]).[2] Granting the requisite deference to County Court's credibility assessments, we find no reason to

---

*People v Danielson*, 9 NY3d 342, 349 [2007]; *People v Garcia*, 79 AD3d 1248, 1250 [2010], *lv denied* 16 NY3d 797 [2011]).

**2.** Notably, defense counsel was permitted to question the victim about her psychiatric history, thus making County Court aware of this issue in assessing

conclude that it "failed to give the evidence the weight it should be accorded" (*People v Romero*, 7 NY3d at 643; *see People v Taylor*, 276 AD2d 933, 935-936 [2000], *lv denied* 96 NY2d 788 [2001]).

As to the April 2010 incident, defendant's conviction for assault in the second degree pursuant to Penal Law § 120.05 (1) required the People to establish that he intentionally caused "serious physical injury" to the victim, defined in pertinent part as "physical injury which creates . . . protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). The victim testified that she was awakened by defendant repeatedly punching her in both eyes with a leather-gloved fist; defendant then cornered and choked the victim and, after she fell on the floor, continued to pummel her in the face until defendant's mother interrupted the attack by knocking on the locked door. Defendant's mother testified that she summoned a relative to take the victim—who could no longer see—to the hospital. The victim's treating physicians, including a hospitalist, an ophthalmic surgeon and an ophthalmologist specializing in glaucoma, testified that, as a result of the attack, the lenses of both of the victim's eyes were dislocated and had to be surgically removed. The victim cannot see without thick eyeglasses, has undergone multiple surgeries, suffers from glaucoma and has sustained irreversible optic nerve damage in both eyes, with particularly severe damage to the left eye that may progress to blindness. The physicians testified that all of these injuries resulted from the attack. We are unpersuaded by defendant's claims that the victim's injuries are not "serious" within the meaning of the statute or that the physicians' opinions as to causation were outweighed by evidence of the victim's hypertension, family history of glaucoma, and occasional noncompliance with her medication regimen. There is no reason to disturb this verdict (*see People v Luck*, 294 AD2d 618, 619-620 [2002], *lv denied* 98 NY2d 699 [2002]; *People v Rumaner*, 45 AD2d 290, 291-292 [1974]).

Finally, the sentence was neither harsh nor excessive. Defendant's claim that the sentence was imposed in retaliation for his rejection of a plea offer is both unpreserved and unsupported (*see People v Hurley*, 75 NY2d 887, 888 [1990]; *People v Perkins*, 62 AD3d 1160, 1162 [2009], *lv denied* 13 NY3d 748 [2009]). In view of the brutal nature of defendant's conduct and his failure to express remorse for its devastating consequences to the

her credibility (*see People v Patterelli*, 68 AD3d 1151, 1153 [2009]; *compare People v Plaisted*, 2 AD3d 906, 909 [2003], *lv denied* 2 NY3d 744 [2004]; *People v Walker*, 116 AD2d 948, 951 [1986], *lv denied* 67 NY2d 952 [1986]).

victim, we perceive no abuse of discretion or extraordinary circumstances warranting reduction (*see People v Eggsware*, 89 AD3d 1277 [2011]; *People v Knapp*, 213 AD2d 740, 742 [1995]).

Mercure, J.P., Spain, Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.